UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RICHARD COUCH, JUMAINE WILKINS,

                         **Plaintiffs,**

         -against-

NEW YORK DAILY NEWS COMPANY, AND
TRIBUNE PUBLISHING COMPANY, LLC,

                         **Defendants.**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**VERIFIED COMPLAINT**

**Civil Action No.:**

**JURY TRIAL DEMANDED**

         Plaintiffs, Richard Couch and Jumaine Wilkins, by their attorneys, Gilbert Law Group, as and for their Verified Complaint, allege as follows:

## NATURE OF THE ACTION

         1.     This is a civil action seeking a declaratory judgment, equitable and injunctive relief, and monetary, compensatory, liquidated, and punitive damages, with pre- and post-judgment interest including, but not limited to, work-related remuneration and benefits, including those set forth in Defendant employer's buyout package to employees, other compensation, benefits, costs, expenses, and attorneys' fees, and to otherwise be made whole, against the Defendants for committing acts which violated the United States and New York State Constitutions, federal and state law, rules, regulations, and lawful procedures, and for committing acts which have deprived, and continue to deprive, Plaintiffs of rights secured to them by such Constitutions, laws, rules, and regulations including, but not limited to, the Americans With Disabilities Act of 1990, 42 U.S.C. §§12101-12213; the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq.; New York City Human Rights Law ("NYCHRL"), N.Y.C. Administrative Code § 8-101 et seq.; New

York State Human Rights Law, Executive Law §290 et seq., New York Civil Rights Law §40-c, New York Labor Law §§ 195 and 215, all other common, federal and state laws, rules and regulations promulgated thereunder, and any other cause of action which can reasonably be inferred from the facts set forth herein, to redress violations of Plaintiffs' rights as guaranteed by the laws of the United States and the State of New York. Additional claims include, but are not limited to, breach of contract, fraud, misrepresentation, unjust enrichment, and equitable or promissory estoppel. This complaint also seeks compensation for the Plaintiffs' severe and acute emotional distress, mental anguish, and psychological trauma due to and caused by Defendants' actions or omissions under the above-enumerated Constitutional provisions, statutes, and common law.

2.      This action is brought for the purpose of seeking appropriate remedies for violations of Plaintiffs' Constitutional, statutory, and common law rights, including employment-based discrimination. Specifically, Plaintiffs' employer, implemented policies and engaged in a continuing course of conduct and pattern of discrimination, harassment, and retaliation due to Plaintiffs' disabilities, record of disabilities, and/or regarding Plaintiffs as disabled. The discrimination, harassment, and retaliation include, but are not limited to, employing policies and engaging in unlawful discriminatory and retaliatory practices, which disparately impacted disabled employees and engaging in conduct constituting disparate treatment against disabled employees, including Plaintiffs, resulting in further pecuniary losses, injuries, and compensatory damages, which have continued to date. Plaintiffs seek all appropriate remedies including, but not limited to, the above-enumerated items, and all appropriate relief to which they are or may be entitled under the law.

## JURISDICTION AND VENUE

3.      Jurisdiction is conferred on the Court by the aforementioned statutes and Constitutional provisions, as well as the Americans with Disabilities Act, 42 U.S.C. §12101 et seq., and 28 U.S.C. §§1331, 1343, 2201, 2202.  This Court has supplemental jurisdiction over Plaintiffs' state and/or local law claims pursuant to 28 U.S.C. §1367.

4.      The basis of venue is that a substantial part of the events or omissions giving rise to this action occurred in the County of Queens, and in this judicial district. 28 U.S.C. §1391(b),(c),(e)

## PARTIES

5.      Plaintiff, Richard Couch ("Mr. Couch" or " Plaintiff Couch"), is an employee of the Defendants. He resides at 141 Benson Avenue, Elmont, New York 11003-2307.

6.      Plaintiff, Jumaine Wilkins ("Mr. Wilkins" or " Plaintiff Wilkins") is an employee of the Defendants. He resides at 5017 Woodside Drive, Tobyhanna, Pennsylvania 18466.

7.      Defendant Tribune Publishing Company, LLC ("Tribune") owns and operates the New York Daily News Company ("Daily News"), is located at 160 North Stetson Avenue, Chicago, Illinois 60611, and is an employer which conducts business in and around the State of New York, including New York City. Tribune is an employer within the meaning of 29 U.S.C. §203(d), §2611(4)(A), (B), the American's With Disabilities Act, 42 U.S.C. §2000e(b), 42 U.S.C. §12111(5)(A), New York State Human Rights Law, Executive Law §292(5), and New York City Human Rights Law, 8 NYCRR § 102.

8.      The Daily News is an employer and has its principal place of business and is located at 4 New York Plaza, New York, New York 10004. The Daily News is an employer within the

meaning of 29 U.S.C. §203(d), §2611(4)(A), (B), the American's With Disabilities Act, 42 U.S.C. §2000e(b), 42 U.S.C. §12111(5)(A), New York State Human Rights Law, Executive Law §292(5), and New York City Human Rights Law, 8 NYCRR § 102.

## STATEMENT OF FACTS

9.     Plaintiffs are employed by the Daily News and Tribune as Truckdrivers in the Production Department.

10.    Mr. Couch has been employed by Defendants since in or around August 1980.

11.    Mr. Wilkins has been employed by Defendants since in or around August 1989.

12.    Mr. Couch was born on March 13, 1962, and is currently 57 years old.

13.    Mr. Wilkins was born on March 2, 1971, and is currently 48 years old.

14.    Truckdrivers' daily duties at the Daily News include, but are not limited to, working an assigned route, delivering newspapers and related materials making approximately 94 stops daily, collecting money from clients, picking up surplus, unbought newspapers, and returning them to their work site.

15.    On or about June 30, 2015, Mr. Couch suffered severe on-the-job injuries when he tripped over a loose wire as a result of the Daily News negligently installing a GPS in Mr. Couch's truck without providing him with notice of said installation. As a result, Mr. Couch suffered a torn anterior cruciate ligament (ACL), torn meniscus, and permanent damage to his knee and shoulder.

16.    In or around October 2015, Mr. Wilkins suffered severe injuries which were the result of a car accident. The aforementioned car accident was unrelated to his employment.

17.    As a result, Plaintiffs are qualified individuals with a disability as defined under 42 U.S.C. §12111(8), the Americans With Disabilities Act (ADA), the New York State Human Rights

Law, New York State Executive Law § 290 et seq.; and New York City Human Rights Law, 8 NYCRR § 102.

18.    Plaintiffs suffer from one or more disabilities which substantially impair one or more major life activities including, but not limited to, their ability to work.

19.    As a result of his injuries and disabilities, Mr. Couch has been forced to take an extended medical leave of absence from on or about July 10, 2015 until present.

20.    In or around April 2016, due to injuries and disabilities, Mr. Wilkins was placed on New York State long-term disability leave.

21.    Both Mr. Couch and Mr. Wilkins are members of the Newspaper and Mail Deliverers' Union of New York and Vicinity, which is a labor union representing Defendants' employees.

22.    In or around September 1992, the Daily News entered into a Collective Bargaining Agreement ("CBA") with the Newspaper and Mail Deliverers' Union of New York and Vicinity. Relevant portions of the CBA remain currently effective.

23.    Section 10, page 15 of the Collective Bargaining Agreement ("CBA"), under the heading, "Procedure for Lay-Off," states in pertinent part:

> Section 10. (a) An employee holding a regular situation who is absent from work in such regular situation for a continuous period of ninety (90) regular working days or more, or who is absent from work in such regular situation for a period aggregating more than one hundred and twenty (120) working days during a calendar year shall be considered to have vacated his regular situation subject to subsection (c) hereof. **This provision however, shall not apply, nor shall seniority be lost by any employee because of absence due to any of the following reasons, provided notice in writing has been given to the publisher.**
>
> **(1) Illness, disability or partial incapacitation by reason of advanced age, during which time the person has no employment elsewhere; or...**
>
> **(4) A leave of absence from the industry.**

CBA, Art. VI, § 10(a); *emphasis added.*

24.     Both Mr. Couch and Mr. Wilkins are employees holding a regular situation, which means they have a regular, permanent route as full-time Truckdrivers for Defendants.

25.     On information and belief, "buyouts" are lump-sum compensation and/or benefits offered to employees.

26.     The CBA has been effectively continued to date by virtue of a June 25, 2000 settlement agreement, February 14, 2007 memorandum of agreement, September 28, 2012 memorandum of agreement, November 2, 2015 memorandum of agreement, and the currently effective October 16, 2018 memorandum of agreement between the union and Defendants.

27.     The November 2, 2015 memorandum of agreement states that the "Publisher will offer thirty-four (34) buyouts in the amount of $70,000.00 to active Regular Situation Holders ("RSH") on the Seniority List effective January 15, 2018, if there are open men (those without jobs) for whom there is not sufficient work, the Publisher will offer buyouts based on seniority."

28.     Both Mr. Couch and Mr. Wilkins reasonably relied on Defendants' compliance with the aforementioned contractual provision.

29.     Section 8 of the October 16, 2018 memorandum of agreement states, in pertinent part:

"The Publisher will offer eighty (80) buyouts over the term of this Agreement as follows:

(a) Within thirty (30) days of the Effective Date of this Agreement, the Publisher will offer buyouts in the amount of $155,000, subject to the Union's dues and assessments, to active RSHs on the Seniority List. The Publisher will accept at least fifty-five (55) but no more than seventy (70) buyouts. Any active RSH who went out on a non-occupational or occupational disability leave as of September 1, 2017 (a year prior to the date the parties commenced negotiations) and has not returned to work as of the date the buyout is distributed will not be eligible for a buyout...

30.     On or about October 17, 2018, in connection with the October 16, 2018 memorandum of agreement, the Daily News issued two (2) side letters which modified and further explained the policy relating to buyouts.

31.     In the October 17, 2018 side letter No. 2, signed by James Brill ("Brill"), the Senior Vice President, Operations for the Daily News, the Daily News stated that it would start denoting those RSHs who have been on non-occupational or occupational disability leave for more than twenty-four (24) months as of the effective date of the October 16, 2018 memorandum of agreement ("2018 MOA") as being "Absent RSHs" on the Seniority List.

32.     The October 17, 2018 side letter No. 2 also explained that the Daily News will promote drivers onto the Seniority List who are not disabled to replace those drivers that are considered to be Absent RSHs, due to their disabilities.

33.     By denoting disabled employees as being "absent," thereby removing them from the Seniority List, Defendants effectively prevent those disabled employees from receiving earned benefits and compensation to which they are entitled including, but not limited to, buyouts.

34.     This Daily News policy is unlawfully discriminatory insofar as it singles out and disparately impacts disabled employees including, but not limited to, Mr. Couch and Mr. Wilkins.

35.     On or about October 30, 2018, the Daily News sent a memorandum to "active" employees which stated, "All regular, active, full-time union-represented Delivery Regular Situation Holder Deliverers in the Production Department of the Company who have worked at least 1 shift between September 1, 2017 and October 30, 2018, have the opportunity to voluntarily resign their employment on January 5, 2019…and receive a Separation Payment under a buyout program in exchange for signing a Separation Agreement and General Release."

36.     The aforementioned October 30, 2018 memorandum further stated that, "Employees, who wish to elect [a voluntary separation buyout], need to complete and return the Participation Election form…"

37.     The Daily News willfully, intentionally, and purposefully chose not to send out the October 30, 2018 memorandum to any disabled employees, including Plaintiffs.

38.     The Daily News' willful and deliberate act of electing not to share with or otherwise provide the October 30, 2018 memorandum to Plaintiffs constitutes unlawful discriminatory disparate treatment against Plaintiffs Couch and Wilkins.

39.     The Daily News' willful and deliberate act of electing not to share with or otherwise provide the October 30, 2018 memorandum to disabled employees also had, and continues to have, an unlawful discriminatory disparate impact on disabled employees, including Plaintiffs.

40.     As a result of Defendants' aforementioned willful acts and omissions, Plaintiffs did not know that, if they had returned to work a single shift between September 1, 2017 and October 30, 2018, they would have been eligible to receive Defendants' buyout plan.

41.     Plaintiffs, in their current condition are able to work a shift, notwithstanding their disabilities.

42.     Mr. Wilkins learned about the contents of the October 30, 2018 memorandum and buyout plan from one of his co-workers.

43.     Mr. Couch did not, at the time, learn of the contents of the October 30, 2018 memorandum and buyout plan.

44.     On or about December 7, 2018, Mr. Wilkins returned to work an entire shift.

45.     On or about December 11, 2018, Mr. Wilkins submitted a completed and signed Participation Election form requesting the buyout.

46.     By returning to work and working a shift and submitting a completed Participation Election form, Mr. Wilkins elected but failed to receive the above-described buyout package.

47.     But for the fact that the Daily News engaged in willful, unlawful, discriminatory disparate treatment by failing to provide Plaintiffs, and other similarly situated disabled employees, with the October 30, 2018 memorandum and related buyout package materials, Mr. Wilkins would have been eligible for the voluntary separation buyout.

48.     But for the fact the Daily News engaged in willful, unlawful, discriminatory disparate treatment by failing to provide Plaintiffs, and other similarly situated disabled employees with the October 30, 2018, memorandum, Mr. Couch would have returned to work and submitted the requisite form so as to maintain eligibility for the voluntary separation buyout.

49.     Numerous agents of the Daily News made verbal representations to Mr. Couch and/or Mr. Wilkins that they would not lose seniority status due to their disabilities and that they would remain eligible for the buyout.

50.     Notwithstanding the aforementioned representations by Defendants' agents, Plaintiffs were effectively prevented from obtaining the buyout package due to their disabilities, record of disabilities, or being regarded as disabled.

51.     As another example of Defendants' discriminatory and/or retaliatory acts, in or around 2018, Plaintiffs had their employer paid life insurance terminated due to their respective disabilities.

52.     As a result, Mr. Couch and Mr. Wilkins continue to suffer monetary damages as they are improperly denied earned benefits and compensation to which they are entitled.

53.     Defendants engaged in the aforesaid and other acts with intent, discriminatory animus, and/or willful or wanton negligence, or recklessness.

54.     On one or more occasions, as disabled employees, Plaintiffs inquired and/or attempted to obtain from Defendants the benefits and remuneration offered by the aforementioned buyout package.

55.     As a result of Plaintiffs' attempts to obtain from Defendants the aforementioned buyout, Defendants engaged in acts of retaliation.

56.     Examples of Defendants' retaliation against Plaintiffs include, but are not limited to, threatening Plaintiffs with termination from employment, threatening to eliminate their medical insurance benefits, eliminating medical insurance benefits, and continuing to withhold providing the written buyout package to Plaintiffs.

57.     Defendants' acts of retaliation against Plaintiffs have adversely and continue to adversely impact Plaintiffs' terms and conditions of employment.

58.     Defendants' acts of retaliation against Plaintiffs have caused Plaintiffs to suffer extreme and egregious physical and emotional distress, mental anguish, and trauma.

59.     Due to Defendants' willful discrimination and retaliation against Plaintiffs, Mr. Couch and Mr. Wilkins suffered and continue to suffer one or more adverse employment actions which have resulted in extensive monetary loss, physical harm, and emotional distress damages.

60.     On August 7, 2019, the EEOC issued a Notice of Right to Sue to Plaintiffs. Plaintiffs have complied with all conditions precedent to initiating this action.

### COUNT I

### VIOLATION(S) OF THE
### EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA),
### 29 U.S.C. § 1001 et seq., AS AGAINST ALL DEFENDANTS

61.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "60," as if fully set forth herein.

62.    Defendants' separation payment and buyout plan constitutes a defined benefit and/or welfare plan covered by the Employee Retirement Income Security Act. *See*, 29 U.S.C. § 1002(3).

63.    Defendants made numerous representations to Plaintiffs regarding the separation payment and buyout plan.

64.    Plaintiffs relied on the representations Defendants made with regard to the separation payment and buyout plan.

65.    Plaintiffs' reliance on Defendants' representations to Plaintiffs with regard to the separation payment and buyout plan was reasonable and justified under the circumstances.

66.    As a result of Defendants' actions and representations with regard to the separation payment and buyout plan, Plaintiffs reasonably relied to their detriment.

67.    As a direct result of their reliance on Defendants' representations, Plaintiffs suffered and continue to incur substantial monetary losses and damages and irreparable harm.

68.    Should the representations made by Defendants regarding the separation payment and buyout plan not be enforced, Plaintiffs will suffer substantial injustice.

69.    Based on the foregoing, Defendants should be estopped from reneging on its representations concerning the separation payment and buyout plan.

## COUNT II

### DISPARATE TREATMENT, DISPARATE IMPACT, AND RETALIATION VIOLATION(S) OF THE AMERICANS WITH DISABILITIES ACT (ADA), 42 U.S.C. § 12101 et seq., AS AGAINST ALL DEFENDANTS

70.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "69," as if fully set forth herein.

71.     Plaintiffs are qualified individuals with a disability as defined under 42 U.S.C. §12111(8), the Americans With Disabilities Act (ADA).

72.     Defendants engaged in unlawful discriminatory practices by discriminating against Plaintiffs because of their disabilities, record of disabilities, and/or regarding them as disabled. 42 U.S.C. § 12101 et seq.

73.     Defendants engaged in acts of retaliation against Plaintiffs following and as a result of their attempts to obtain benefits which were denied to them based on their status as disabled employees.

74.     Defendants implemented a separation payment and buyout program that significantly, disproportionately, and adversely impacts disabled employees, including Plaintiffs.

75.     The Defendants willfully and deliberately acted in bad faith by failing to disseminate essential information regarding the separation payment and buyout plan to Plaintiffs, and other similarly situated disabled employees, so as to deprive them of the same opportunity to opt into and/or exercise their ability to obtain earned benefits of the buyout plan that similarly situated non-disabled individuals possessed.

76.     Defendants' policies and conduct constitute unlawful disparate treatment.

77.     Defendants' policies and conduct had a disparate impact on disabled employees, including Plaintiffs.

78.     Defendants' unlawful discriminatory animus against disabled employees was a significant motivating factor in its agents' conduct and its discriminatory policies.

79.     As a direct result of Defendants' unlawful policies and conduct, Plaintiffs suffered and will continue to incur substantial damages, losses, and irreparable harm.

80.     Defendants' actions and/or omissions against the Plaintiffs violate the ADA, 42 U.S.C. §12101 et seq., and related laws, rules, and regulations.

## COUNT III

### DISPARATE TREATMENT AND DISPARATE IMPACT VIOLATION(S) OF THE NEW YORK CITY HUMAN RIGHTS LAW, NEW YORK CITY ADMINISTRATIVE CODE § 8-101 et seq., AS AGAINST ALL DEFENDANTS

81.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "80," as if fully set forth herein.

82.     Plaintiffs are qualified individuals with a disability as defined under New York City Human Rights Law, NYCHRL §§ 8-101 et seq.

83.     Defendants engaged in. unlawful discriminatory practices by discriminating against Plaintiffs because of their disability, record of disability, and regarding them as disabled. NYCHRL § 8-107.

84.     Defendants implemented a separation payment and buyout program that is outwardly neutral on its face.

85.     Defendants implemented a separation payment and buyout program that significantly, disproportionately, and adversely impacts disabled employees, including Plaintiffs.

86.     Defendants engaged in acts of retaliation against Plaintiffs following and as a result of their attempts to obtain benefits which were denied to them based on their status as disabled employees.

87.     The Defendants willfully and deliberately acted in bad faith by failing to disseminate information regarding the separation payment and buyout plan to Plaintiffs, and other similarly situated disabled employees, so as to deprive them of the same opportunity to  opt into

and/or exercise their ability to obtain earned benefits of the buyout plan that similarly situated non-disabled individuals possessed.

88.     Defendants' policies and conduct constitute unlawful disparate treatment.

89.     Defendants' unlawful discriminatory animus against disabled employees was a significant motivating factor in its agents' conduct and its discriminatory policies.

90.     As a direct result of Defendants' unlawful policies and conduct, Plaintiffs suffered and will continue to incur substantial damages, losses, and irreparable harm.

91.     Defendants' actions and/or omissions against the Plaintiffs violate New York State City Human Rights Law, NYCHRL §§ 8-100 et seq., and related laws, rules, and regulations.

## COUNT IV

### DISPARATE TREATMENT AND DISPARATE IMPACT VIOLATION(S) OF THE NEW YORK STATE HUMAN RIGHTS LAW, NEW YORK EXECUTIVE LAW § 290 et seq., AS AGAINST ALL DEFENDANTS

92.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "91," as if fully set forth herein.

93.     Plaintiffs are qualified individuals with a disability as defined under New York City Human Rights Law, NYCHRL §§ 8-101 et seq.

94.     Defendants implemented a separation payment and buyout program that significantly, disproportionately, and adversely impacts disabled employees.

95.     The Defendants willfully and deliberately acted in bad faith by failing to disseminate information regarding the separation payment and buyout plan to Plaintiffs, and other similarly situated disabled employees, so as to deprive them of the same opportunity to opt into and/or exercise their ability to obtain earned benefits of the buyout plan that similarly situated non-disabled individuals possessed.

96.     Defendants' policies and conduct constitute unlawful disparate treatment.

97.     Defendants' unlawful discriminatory animus against disabled employees was a significant motivating factor in its agents' conduct and its discriminatory policies.

98.     The Defendants' conduct was so extreme, outrageous, and egregious and so far beyond from that of a normal and decent employer that it warrants an imposition of substantial monetary damages in favor of and as compensation for the Plaintiffs.

99.     As a direct result of Defendants' unlawful policies and conduct, Plaintiffs suffered and will continue to incur substantial damages, losses, and irreparable harm.

100.    Defendants' actions and/or omissions against the Plaintiffs violate New York State Human Rights Law, Executive Law § 290 et seq., and related laws, rules, and regulations.

## COUNT VI

### VIOLATION(S) OF NEW YORK STATE LABOR LAW §§ 195 AND 217, AS AGAINST ALL DEFENDANTS

101.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "100," as if fully set forth herein.

102.    Defendants terminated Plaintiffs' employee benefits without providing them with sufficient notice.

103.    New York Labor Law § 195 states in pertinent part that employers must  notify an employee of the exact date of cancellation of the employee's benefits within five working days of such cancellation.

104.    New York Labor Law § 217 states in pertinent part that employers must provide written notice to an employee or his or her labor organization when an insurance policy has been terminated.

105.    New York Labor Law § 217 permits employees aggrieved from violations of their rights to pursue their rights in court.

106.    Such failures to provide notice constitute violations of New York State Labor Law §§ 195 and 217 respectively.

### COUNT VII

### BREACH OF CONTRACT AND ADDITIONAL UNLAWFUL DISCRIMINATORY ACT(S), AS AGAINST ALL DEFENDANTS

107.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "106," as if fully set forth herein.

108.    The CBA negotiated between Defendants and Plaintiffs' Union provided "nor shall seniority be lost by any employee because of absence due to…disability or…a leave of absence from the industry." CBA, Art. VI, § 10(a).

109.    While the CBA was in effect, Mr. Couch suffered an on-the-job injury and developed a severe disability which directly caused him to take an extended leave of absence.

110.    After Mr. Couch suffered the aforementioned disability and was placed on an extended leave of absence, Defendants created an "Absentee List" in order to prevent disabled employees from accruing seniority. As a result, Defendants caused Mr. Couch to lose seniority.

111.    Mr. Couch's loss of seniority constitutes a breach of the CBA for which Mr. Couch has incurred losses and damages.

112.    Defendant's creation of the Absentee List constitutes another example of unlawful discriminatory practices engaged in by Defendants as against disabled employees, including Plaintiffs.

## COUNT VIII

### PROMISSORY AND/OR EQUITABLE ESTOPPEL
### AS AGAINST ALL DEFENDANTS

113.   Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "112," as if fully set forth herein.

114.   Defendants made numerous representations to Plaintiffs regarding the separation payment and buyout plan.

115.   Plaintiffs relied on the representations Defendants made with regard to the separation payment and buyout plan.

116.   Plaintiffs' reliance on Defendants' representations to Plaintiffs with regard to the separation payment and buyout plan was reasonable and justified under the circumstances.

117.   As a result of Defendants' actions and representations with regard to the separation payment and buyout plan, Plaintiffs reasonably relied to their detriment.

118.   As a direct result of their reliance on Defendants' representations, Plaintiffs suffered and continue to incur substantial monetary losses and damages and irreparable harm.

119.   Should the representations made by Defendants regarding the separation payment and buyout plan not be enforced, Plaintiffs will suffer substantial injustice.

120.   Based on the foregoing, Defendants should be estopped from reneging on its representations concerning the separation payment and buyout plan.

### COUNT IX

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### AS AGAINST ALL DEFENDANTS

121.   Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "120," as if fully set forth herein.

122. At all times herein mentioned, the Plaintiffs suffered extreme and outrageous fear, anxiety, mental and emotional stress and aggravation, and physical and psychological trauma as a result of the discriminatory acts, harassment, retaliation, and misrepresentations made by the Defendants.

123. The Defendants' conduct, which caused Plaintiffs to suffer extreme and egregious emotional distress includes, but is not limited to, disparate treatment due to their disabilities, the disparate impact of Defendants' policies, the numerous representations Defendants reneged on leading to Plaintiffs suffering significant losses, damages and irreparable harm, Defendants' improper termination of benefits and compensation, and Defendants' failure to notify Plaintiffs as to their loss of employment, compensation, and/or emoluments of employment.

124. The Defendants engaged in this course of action with the intent to injure or damage Plaintiffs' well-being, health, mental state, and/or ability to work.

125. The Defendants engaged in this course of action intentionally and with malice towards Plaintiffs.

126. Based upon the aforementioned conduct, the Defendants are legally responsible to compensate the Plaintiff for damages including actual damages, punitive damages, and statutory damages, together with attorneys' fees, costs and disbursements of this action, which amounts to a figure in excess of the monetary jurisdiction limitations of all lower courts.

127. The Defendants' conduct was so extreme, outrageous, and egregious and so far beyond from that of a normal and decent employer that it warrants an imposition of substantial compensatory damages in favor of and as compensation for the Plaintiffs.

## COUNT X

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## AS AGAINST ALL DEFENDANTS

128.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "127," as if fully set forth herein.

129.    Defendants' conduct with respect to the aforementioned acts and omissions were made for the sole purpose of harming Plaintiffs and other employees similarly situated, and constitute extreme and outrageous conduct when measured by the reasonable bounds of decency tolerated by society.

130.    When the Defendants negligently engaged in the aforementioned conduct, it intended to cause, or negligently disregarded a substantial probability of causing, severe emotional distress upon Plaintiffs by harming them emotionally, physically, and/or financially.

131.    As a result of the foregoing, Plaintiffs have suffered and continue to incur substantial monetary damages, and have been irreparably harmed.

132.    The Defendants' conduct was so extreme, outrageous, and egregious and so far beyond from that of a normal and decent employer that it warrants an imposition of substantial monetary damages in favor of and as compensation for the Plaintiffs.

## COUNT XI

### FOR AND ON BEHALF OF PLAINTIFFS – PUNITIVE DAMAGES

133.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "132," as if fully set forth herein.

134.    Defendants knew or should have known of their obligations under the law.

135.    All of the aforementioned conduct engaged in by Defendants against Plaintiffs was done intentionally, willfully, with knowledge, and in wanton and deliberate bad faith.

136.    Defendants' conduct was so egregious and intentionally wanton that it warrants an imposition of a substantial award of punitive damages.

## JURY DEMAND

137.    Plaintiff demands a trial by jury of all issues in the action.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully demand judgment against the Defendants as follows:

a.      Declaring that the employment practices and actions complained of in this complaint are unlawful and in violation of applicable Constitutional, federal, state, and/or common law, with regard to Plaintiffs and other employees similarly situated;

b.      Ordering that Plaintiffs be made whole with the above-described separation buyout payment, seniority, salary increments, bonuses, pension credit, out-of-pocket losses, including medical and insurance expenses, and all other retroactive remuneration and emoluments of employment to the same extent Plaintiffs would have received but for Defendants' unlawful conduct;

c.      To the extent that the Defendants refused and/or failed to provide Plaintiffs an earned benefit, Plaintiffs should be made whole, together with all other pecuniary losses, and prospective emoluments of employment to the same extent Plaintiffs would have received but for Defendants' unlawful conduct;

d.      Awarding compensatory damages in the sum of $5,000,000.00 for each count of the Complaint for Plaintiffs' emotional pain and distress, mental anguish, humiliation, suffering, loss of enjoyment of life, inconvenience, physical harm and injuries, future pecuniary losses, and other non-pecuniary losses;

e.     Awarding punitive damages in the sum of $5,000,000.00 for each count of the Complaint;

f.     Permanently enjoining the Defendants and its agents, officers, and/or employees from engaging in any of the practices found by this Court to be in violation of the laws, statutes, or Constitutional provisions cited herein;

g.     Enjoining the Defendants and its agents, officers, and/or employees from otherwise harassing, discriminating, and/or retaliating against the Plaintiffs;

h.     Awarding reasonable attorneys' fees as permitted by law;

i.     Awarding expert fees, if any, as well as the costs and expenses of the prosecution of this action;

j.     Awarding pre-judgment and post-judgment interest at the statutory rate until time of payment;

k.     Directing that the Court retain jurisdiction over this action to ensure full compliance with the Court's Orders and requiring the Defendants to file such reports as the Court deems necessary to evaluate such compliance; and

l.     Together with such other and further relief as the Court deems just and equitable.

Dated: Melville, New York
      October 18, 2019

Respectfully submitted,

GILBERT LAW GROUP

By:                                    
                    JASON ANDREW GILBERT

Attorneys for Plaintiffs
425 Broadhollow Road, Suite 405
Melville, New York 11747-4701
(631) 630-0100

**VERIFICATION**

**STATE OF NEW YORK** }
                }ss.:
**COUNTY OF SUFFOLK** }

      I, RICHARD COUCH, being duly sworn, depose and say that deponent is the  Plaintiff in the within action; I have read the foregoing complaint, and know the contents thereof; that the same are true to my knowledge, except as to the matters therein stated to alleged upon information and belief, and to those matters, I believe them to be true.

_____
RICHARD COUCH

Sworn to before me on the
18th   day of October 2019

                  **JASON A. GILBERT**
        **NOTARY PUBLIC-STATE OF NEW YORK**
              **No. 02GI6316433**
          **Qualified in Suffolk County**
     **My Commission Expires December 15, 2022**

_____
Notary Public

**VERIFICATION**

**STATE OF NEW YORK** }

**COUNTY OF** Suffolk }ss.:

     I, JUMAINE WILKINS, being duly sworn, depose and say that deponent is the Plaintiff in the within action; I have read the foregoing **complaint, and know the contents thereof; that the** same are true to my knowledge, except as to the matters therein stated to alleged upon information and belief, and to those matters, I believe them to be true.

                                **JUMAINE WILKINS**

Sworn to before me on the
18ᵗʰ day of October 2019

                     **JASON A. GILBERT**
     **NOTARY PUBLIC-STATE OF NEW YORK**
            **No. 02GI6316433**
       **Qualified In Suffolk County**
  **My Commission Expires December 15, 20 22**

Notary Public

24